# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDREW PARIS,<br><br>    Petitioner,<br><br>vs.<br><br>GEORGE A. NEOTTI, Warden,<br><br>    Respondent. | CASE No. 10-CV-1586 JLS (WMc)<br><br>**ORDER: (1) ADOPTING REPORT AND RECOMMENDATION, (2) GRANTING MOTION TO DISMISS SECOND AMENDED PETITION, AND (3) DENYING AS MOOT MOTION TO STAY**<br><br>(Doc. Nos. 14, 17, 18) |

Presently before the Court is Magistrate Judge McCurine's report and recommendation ("R&R") advising the Court to dismiss with prejudice Michael Andrew Paris's ("Petitioner") Petition for Writ of Habeas Corpus by a Person in Custody ("Petition"). (R&R, ECF No. 18.) Also before the Court are Petitioner's objections to the R&R. (Objs., ECF No. 19). After careful consideration of the facts and law, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the R&R, **DISMISSES** the Second Amended Petition ("SAP") **WITH PREJUDICE**, and **DENIES AS MOOT** Petitioner's request that this Court stay his First Amended Petition ("FAP").

///

# BACKGROUND

Magistrate Judge McCurine's R&R contains a thorough and accurate recitation of the factual and procedural history underlying the instant motion. (R&R 2–5, ECF No. 18.) This Order incorporates by reference the background as set forth in the Procedural Background section of the R&R, and briefly summarizes the most relevant facts here.

Petitioner, a state prisoner, filed his Petition on July 29, 2010. (Pet., ECF No. 1.) In his Petition, Petitioner claimed a denial of his Sixth Amendment rights due to ineffective assistance of counsel and a denial of his Fifth Amendment right to not testify against himself because of prosecutorial misconduct. (*Id.* at 14–27.) On October 8, 2010, Respondent filed an Answer, contending that Petitioner failed to completely exhaust his claims in state court. (Answer 12-38, ECF. No. 6.) Petitioner filed a Traverse to Petition on November 8, 2010. (Trav., ECF No. 8.)

On December 7, 2011, Magistrate Judge McCurine issued an R&R finding that Petitioner failed to exhaust his Sixth Amendment claims and advising the Court to dismiss the petition without prejudice in order to allow Petitioner either to amend and move forward without the unexhausted claims, or to return to state court and exhaust such claims if possible. (R&R 12–13, ECF No. 10.) Petitioner objected to the R&R on January 4, 2012. (Objs., ECF No. 11). On January 7, 2013, after considering both the first R&R and Petitioner's objections, this Court ultimately adopted the R&R in full and dismissed the Petition without prejudice. (Order, ECF No. 12.) The Court granted Petitioner forty-five days in which to file an amended petition excluding the unexhausted claims. (*Id.* at 13.)

On February 20, 2013, Petitioner filed a FAP, which asserted only his exhausted Fifth Amendment claim. (FAP, ECF No. 13.) On the same day, Petitioner also filed a motion to stay his FAP. (Mot. to Stay, ECF No. 14.) On February 22, 2013, Respondent filed an opposition to Petitioner's motion to stay. (Resp. in Opp'n, ECF No. 15.) Petitioner did not file a reply.

On June 21, 2013, Petitioner filed a SAP, which reasserted his allegedly newly exhausted Sixth Amendment claims. (SAP, ECF No. 16.) On July 3, 2013, Respondent moved to dismiss Petitioner's SAP. (Mot. to Dismiss ("MTD"), ECF No. 17.) Petitioner did not respond to the MTD. On August 8, 2013, Magistrate Judge McCurine issued an R&R finding that Petitioner's Sixth Amendment claims were neither timely nor related back, and recommending that this Court dismiss Petitioner's SAP with prejudice. (R&R, ECF No. 18.) On September 4, 2013, Petitioner filed objections to the R&R. (Objs., ECF No. 19.) Respondent did not reply.

## LEGAL STANDARD

**1.   Review of the Report and Recommendation**

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz,* 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

**2.   Cognizable Claim for Relief**

Under federal law, a prisoner seeking relief on claims related to imprisonment may file a petition for habeas corpus pursuant to 28 U.S.C. § 2254. A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal intervention in state court proceedings is only justified when there are errors of federal law. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir.

1989). Federal habeas courts are bound by a state's interpretation of its own laws. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas petitions filed after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997). AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A federal court can grant habeas relief only when the result of a claim adjudicated on the merits by a state court "was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court authority, or (2) "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (citation omitted). An "unreasonable" application of precedent "must have been more than incorrect or erroneous"; it "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Further, even if a reviewing federal court determines a constitutional error has occurred, relief is only authorized if the petitioner can show that the "error had a substantial and injurious effect" on his conviction or sentence. *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

**3.     Exhaustion of Claims**

A petitioner must exhaust available state remedies as a prerequisite to a federal court's consideration of claims presented in a habeas corpus proceeding. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971). If the petitioner has not exhausted the available state remedies, he must show that there is an absence of available state corrective process or that circumstances exist that render such process

ineffective to protect his rights. 28 U.S.C. § 2254(b)(I), (ii). Exhaustion is accomplished if the state's highest court had an opportunity to rule on the merits of the claim. *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982). The petitioner is required to "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard*, 404 U.S. at 276–77). Also, the petitioner must have "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Id.* at 6 (quoting *Picard*, 404 U.S. at 275, 277–78).

A petitioner must develop "the material facts underlying [the] portion of his ineffective assistance of counsel claim in state court," or "demonstrate adequate cause for his or her failure [to develop those facts] and actual prejudice resulting from that failure." *Correll v. Stewart*, 137 F.3d 1404, 1411–12 (9th Cir. 1997). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson*, 459 U.S. at 6 (citing *Picard*, 404 U.S. at 277). Instead, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 276. To be fairly presented, and therefore exhausted, a petition to the Supreme Court of California cannot present a claim by incorporating by reference arguments from lower courts. *Kibler v. Walter*, 220 F.3d 1151, 1151 (9th Cir. 2000). Further, *Kibler* expresses that claims must be made to the reviewing court in either the petition or answer, and must be made "with specificity." *Id.*

## ANALYSIS

Petitioner claims that he was denied effective assistance of counsel under the Sixth Amendment. (SAP 18–30, ECF No. 16-1.) Petitioner breaks this claim into five sub-claims:

> a. The failure by trial counsel to interview or investigate witness Matthew McClure and call him at trial as a defense witness . . . b. The failure by trial counsel to interview or investigate witness Dontaye Craig and call him at trial as a defense witness . . . c. Trial counsel's failure to investigate or adequately prepare for trial . . . d. [T]rial counsel['s failure] to object to inadmissible and prejudicial testimony of the

>prosecution's gang expert . . . [and e.] . . . [T]rial counsel['s failure] to object to the admission of the tape recorded conversation with William Trice.

(*Id.* at i.)[1]

### 1. Summary of R&R's Conclusions

Magistrate Judge McCurine determined that Petitioner is not entitled to a stay-and-abeyance under *Rhines*,[2] because this Court's January 7, 2013 Order found Petitioner to lack good cause, and Petitioner's motion to stay failed to raise any additional arguments for good cause. (R&R 8, ECF No. 18.)

The magistrate judge then generously evaluated Petitioner's SAP under the *Kelly* withdrawal-and-abeyance procedure, despite Petitioner's failure to request a stay under *Kelly*.[3] Magistrate Judge McCurine first noted that Petitioner's FAP and SAP were filed after the AEDPA statute of limitations had run. (*Id.* at 9.) Second, the magistrate judge found that Petitioner was not entitled to statutory tolling, because "Petitioner did not attempt to exhaust his unexhausted claims in state court until nearly two years after the AEDPA statute of limitations had run." (*Id.* at 10.)

Third, the magistrate judge determined that Petitioner was not entitled to equitable tolling, because Petitioner failed to make any arguments as to why it should apply. (*Id.* at 12.) The magistrate judge determined that Petitioner's asserted good-cause arguments were insufficient to merit equitable tolling, because Petitioner's attorney's failure to exhaust was merely negligence and constituted neither egregious conduct nor abandonment. (*Id.* at 12–13.) Fourth, Magistrate Judge McCurine noted that Petitioner failed to address how his unexhausted claims "relate back" to his exhausted Fifth Amendment claim. (*Id.* at 13–14.) Moreover, the magistrate judge stated that he

---

[1] Hereinafter the Court will refer to these sub-parts as sub-claims 1 through 5, respectively. Petitioner's objections to the R&R (ECF No. 19) seem to confuse the numbering of some of these sub-claims; however, the Court will refer to these claims as laid out here and in prior court filings.

[2] *Rhines v. Weber*, 544 U.S. 269 (2005).

[3] *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).

"cannot discern how a claim about prosecutorial misconduct relates to claims regarding ineffectiveness of counsel." (*Id.* at 14.) Magistrate Judge McCurine concluded that "Petitioner has failed to connect his newly exhausted claims to a pending petition," and therefore the SAP was time barred. (*Id.* at 14.)

Accordingly, Magistrate Judge McCurine recommended that this Court deny Petitioner's motion to stay his SAP and grant Respondent's motion to dismiss, "permit[ting] Petitioner to proceed on his one fully-exhausted Fifth Amendment claim." (*Id.* at 14.) Importantly, however, the magistrate judge noted that Petitioner never responded to Respondent's motion to dismiss, and he directed Petitioner to present any arguments in opposition to the motion to dismiss in his written objections to the R&R. (*Id.* at 14–15.)[4]

**2. Objections to the R&R's Conclusions**

Petitioner first objects to the R&R on the grounds that the magistrate judge erroneously determined that Petitioner had failed to show good cause as required for the *Rhines* stay-and-abeyance procedure. (Objs. 7, ECF No. 19.) Petitioner claims that he was entitled to rely on Respondent's alleged concession in his October 8, 2010 Answer that Petitioner had fully exhausted sub-claims 1 and 2. (*Id.* at 7–8.) Petitioner claims to have detrimentally relied on Respondent's statement, and that Respondent's later arguments that Petitioner had failed to exhaust any of his Sixth Amendment claims violated his right to due process of law. (*Id.* at 11.) Petitioner also alleges that "Respondent's concession in his answer starkly contrasts with his later argument in his motions in opposition to petitioner's request for a stay and to dismiss the FAP and SAP," and that "Respondent's tactical pleading in this case crosses the proverbial line into prosecutorial misconduct." (*Id.* at 10.)

Petitioner further argues that Respondent's failure to raise the statute of limitations as to sub-claims 1 and 2 constitutes a waiver of that defense as to those sub-claims, and that therefore the AEDPA statute of limitations does not apply to these claims, rendering

---

[4] Accordingly, Petitioner makes many arguments in his objections that were not analyzed in the R&R, and that are therefore analyzed for the first time in this Order.

them timely. (*Id.* at 9.) Petitioner also asserts that he "could not have reasonably anticipated that the magistrate report and recommendation and the District Court's order would reject respondent's explicit concession of exhaustion relating to petitioner's primary Sixth Amendment claim," and that the magistrate judge's failure to issue his first R&R "in a timely manner" prejudiced Petitioner. (*Id.*)

Second, Petitioner claims that his SAP is timely filed because he can amend his Petition once as a matter of course without the Court's leave because Respondent has not yet filed a responsive pleading to the FAP. (*Id.* at 14.) Alternatively, Petitioner notes that he can amend his pleadings by leave of court, and requests this Court to grant him leave to amend. (*Id.* at 15–16.) Petitioner argues that any amended petitions would "relate back" to his original Petition, because he is asserting the same claims and Respondent, therefore, will not be prejudiced by adding those claims. (*Id.* at 16.)

Third, Petitioner argues that if the *Kelly* withdrawal-and-abeyance procedure applies, his reliance on Respondent's alleged concession to sub-claims 1 and 2, "and the over two year delay combined delay [*sic*] by the magistrate and District Court" entitle him to equitable tolling of his Sixth Amendment claims. (*Id.* at 19.) Fourth, Petitioner suggests that his claims "relate back" to his earlier petitions, because the SAP contains only the same "conduct, transactions and occurrences." (*Id.* at 21–22.) In the alternative, Petitioner claims that his newly exhausted Sixth Amendment claims are "sufficiently related and intertwined" with his Fifth Amendment claim to justify relation back. (*Id.* at 22–23.)

The Court addresses each of these arguments in turn.

**3.     Analysis**

*(A)* **Rhines** *Stay-and-Abeyance*

Generally, mixed habeas corpus petitions that contain one or more unexhausted claims must be dismissed. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Under the "stay-and-abeyance" procedure approved in *Rhines v. Weber*, district courts should stay a mixed petition when "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the

1 petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. 269, 277–78
2 (2005) ("[S]tay and abeyance is only appropriate when the district court determines there
3 was good cause for the petitioner's failure to exhaust his claims first in state court.").
4 A petitioner's "impression" that his counsel raised claims sufficient to satisfy the
5 exhaustion requirement does not, generally, constitute "good cause" for granting a stay.
6 *See Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008).

*(1) Petitioner's Reliance on Respondent's Alleged Concession that Sub-Claims 1 and 2 Were Exhausted Does Not Constitute Good Cause*

Petitioner claims that he was entitled to, and did, detrimentally rely on Respondent's alleged concession that Petitioner's sub-claims 1 and 2 were fully exhausted. (Objs. 7-8, 11, ECF No. 19.) This argument, however, lacks merit.

The Ninth Circuit has stated that "a habeas court may, in its discretion, reach the merits of a habeas claim or may insist on exhaustion of state remedies **despite a State's waiver of the defense**. The court's discretion should be exercised to further the interests of comity, federalism, and judicial efficiency." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998) (emphasis added) (citing *Granberry v. Greer*, 481 U.S. 129, 134–35 (1987); *Paradis v. Arave*, 130 F.3d 385, 390 (9th Cir. 1997)) (remaining citations omitted). Because this Court could have raised the issue of exhaustion on its own, Petitioner had no right to rely on Respondent's characterization of Petitioner's claims. After all, Petitioner has the burden of laying the foundation showing his entitlement to habeas relief. As this Court has already admonished,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not* be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (emphasis added). A petitioner bears the burden of proving that a claim has been exhausted. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). Therefore, Respondent's alleged concession that a claim has been exhausted carries no weight and is not binding upon the Magistrate Judge.

///

///

///

(Order 9, ECF No. 12.) Accordingly, the Court finds this argument to be without merit,[5] and **OVERRULES** Petitioner's objections on this basis.

*(2) The AEDPA Statute of Limitations Applies to Sub-Claims 1 and 2*

Petitioner argues that because Respondent explicitly contested the timeliness of sub-claims 3 to 5, but not sub-claims 1 and 2, in the Answer, Respondent has waived the AEDPA statute of limitations as to sub-claims 1 and 2. (Objs. 8–9, ECF No. 19.) Even if this Court were to find that Respondent failed to raise the AEDPA statute of limitations as to sub-claims 1 and 2, however, Petitioner has clearly misread *Day v. McDonough*, 547 U.S. 198 (2006), which is controlling authority on this Court.

In *Day*, the State, in its answer to the petitioner's federal habeas petition, failed to raise the AEDPA statute of limitations as to any of the petitioner's claims, and instead explicitly stated that the petition was timely. *Id.* at 203. A magistrate judge realized that the petition was not timely; ordered the petitioner to show cause why the petition should not be dismissed as untimely; and ultimately, having found the petitioner's response to be inadequate, recommended that the petition be dismissed. *Id.* at 204. The U.S. Supreme Court affirmed the dismissal, stating, "we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition. We so hold, noting that it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners." *Id.* at 209. The Supreme Court, however, cautioned that a court must first "accord the parties fair notice and an opportunity to present their positions." *Id.* at 210.

Thus, Petitioner was not entitled to rely on Respondent's classification of sub-claims 1 and 2 as timely or untimely. Both Magistrate Judge McCurine and this Court were entitled to *sua sponte* determine that sub-claims 1 and 2 were time barred. Petitioner has had notice of the fact that the timeliness of several of his Sixth

---

[5] Because the Court finds that Petitioner was not entitled to rely on Respondent's pleadings in this matter, the Court considers it unnecessary to address whether Respondent's purported "tactical pleading" violated Petitioner's right to due process. The Court also finds that, because magistrate and district court judges have the discretion to raise exhaustion issues *sua sponte*, Petitioner's allegations that the purportedly slow processing of his habeas petition prejudiced him are equally meritless. Petitioner should have diligently pursued and thoroughly presented his claims himself.

1  Amendment claims was likely to be an issue when Respondent filed an Answer on
2  October 8, 2010, arguing that those claims were unexhausted. (Answer 12–38, ECF No.
3  6.)  Furthermore, Petitioner had the opportunity to take action to toll the limitations
4  period or to respond to allegations concerning timeliness in his traverse (ECF No. 8), in
5  his objections to the first R&R (ECF No. 11), in response to Respondent's MTD (which
6  response Petitioner declined to make), and in his objections to the R&R presently before
7  this Court (ECF No. 19).

8  Thus, under *Day*, Respondent's alleged failure to raise the AEDPA statute of
9  limitations as a bar to sub-claims 1 and 2 does not automatically waive the statute of
10 limitations with regards to those claims, and Magistrate Judge McCurine and this Court
11 were entitled to make that determination *sua sponte*.  Moreover, Petitioner has had
12 multiple opportunities to present his position on the issue of timeliness.  Accordingly,
13 the Court **OVERRULES** Petitioner's objections on these grounds.

14 *(3) Petitioner Is Not Entitled to Amend His Petition as a Matter of Course*

15 Petitioner claims that he can amend his Petition once as a matter of course without
16 leave of court because Respondent has not yet filed a responsive pleading to the FAP.
17 (Objs. 14, ECF No. 19.)  Petitioner is mistaken, however.

18 Federal Rule of Civil Procedure 15(a)(1)(B) states that a party is entitled to amend
19 a pleading without seeking permission of the court or any opposing parties up to twenty-
20 one days after service of any required responsive pleading or motion.[6]  "A habeas
21 petitioner's opportunity to amend as a matter of course, without permission of the trial
22 court, exists only before the responsive pleading is served, and even then only once.
23 After one amendment, or after the government files the answer or other response . . . the
24 prisoner may not amend without the court's leave or the government's consent." *Mayle*
25 *v. Felix*, 545 U.S. 644, 665 (2005) (Souter, J., dissenting).  Respondent answered
26 Petitioner's petition on October 8, 2010. (ECF No. 6.) Respondent's answer terminated
27 Petitioner's right to any further amendment of his Petition without either this Court or

---

[6]The Federal Rules of Civil Procedure apply to habeas corpus proceedings. *See* Fed. R. Civ. P. 81(a)(4); 28 U.S.C. § 2242.

Respondent's consent. Accordingly, the Court **OVERRULES** Petitioner's objections on this basis.

*(4) This Court Denies Permission to Amend*

Petitioner correctly notes that this Court has discretion to grant him leave to amend his Petition, and he requests this Court to allow him to do so. (Objs. 15–16, ECF No. 19.) The Court, however, declines Petitioner's invitation to grant such leave.

Federal Rule of Civil Procedure 15(a)(2) admonishes that "[t]he court should freely give leave [to amend] when justice so requires." Justice does not "so require," however, in circumstances evidencing "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds, for the reasons provided herein, that amendment would be futile, as the Sixth Amendment claims are time barred and do not relate back to the exhausted Fifth Amendment claim.

Accordingly, for the reasons set forth above, this Court **ADOPTS** the R&R's conclusion that Petitioner has failed to allege good cause for a stay-and-abeyance and that, therefore, a stay under *Rhines* is inappropriate.

*(B)* **Kelly** *Withdrawal-and-Abeyance*

Under the withdrawal-and-abeyance procedure outlined in *Kelly v. Small*, (1) a habeas petitioner amends his petition to delete any unexhausted claims, (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims, and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition. 315 F.3d at 1070–71. Unlike a request for stay-and-abeyance, a showing of "good cause" is not required for the withdrawal-and-abeyance procedure where a fully exhausted petition is stayed. *King v. Ryan*, 564 F.3d 1133, 1136 (9th Cir. 2009). A petitioner using the withdrawal-and-abeyance procedure will be able to re-allege his unexhausted claims in his federal petition after exhausting them only if those

claims are determined to be timely[7] or if the unexhausted claims share a common core of operative facts with the claims in the pending petition. *Id.* at 1140–41.

*(1) Petitioner Is Not Entitled to Equitable Tolling*

The one-year AEDPA statute of limitations may be equitably tolled "in appropriate cases." 28 U.S.C. § 2244(d)(2); *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010). However, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). Equitable tolling, therefore, only applies if a petitioner has diligently pursued his rights, but some rare or exceptional circumstance has prevented timely filing. *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012); *see also Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (requiring a causal connection between the extraordinary circumstance and the late filing). Equitable tolling is unavailable if conduct attributable to the petitioner causes the untimeliness; rather, external forces must be at fault. *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012); *see also Miles v. Prunty*, 187 F.3d 1104 (citations omitted). Furthermore, absent egregious conduct or abandonment, counsel's untimeliness is likewise imputed to the petitioner, thereby barring equitable tolling. *See Maples*, 132 S. Ct. at 922–23 (holding that an attorney's mere negligence is insufficient grounds for equitable tolling).

Petitioner claims that his reliance on Respondent's alleged concession to the exhaustion of sub-claims 1 and 2, and the delays of the magistrate judge and this Court, entitle him to equitable tolling of his Sixth Amendment claims. (Objs. 19, ECF No. 19.)

///

///

---

[7] An amended petition is timely (1) if it is filed within the one-year AEDPA statute of limitations, (2) if statutory tolling applies, or (3) if equitable tolling applies. *See King*, 564 F.3d at 1141; *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002); *Tillema v. Long*, 253 F.3d 494, 498 (9th Cir. 2001). Petitioner does not contest that the more than one year passed after his state court judgment became final before he filed his federal habeas petition, nor does he object to the magistrate judge's ruling that statutory tolling does not apply. Thus, this Court only analyzes Petitioner's objections with regards to equitable tolling.

1  Petitioner faced no "extraordinary circumstances," however. Petitioner only discusses normal occurrences in the judicial process. A party's arguments are not set in stone, and delays are commonplace.

More importantly, Petitioner was not at the mercy of external forces. Instead, Petitioner's own conduct and lack of diligence are to blame for the untimeliness of his claims. A petitioner pursuing his rights with reasonable diligence would have filed for post-conviction or other collateral review of the ineffective assistance of counsel claims in state court in the four months between learning of Respondent's arguments that those claims were not exhausted and the end of the AEDPA statutory period. Such action would have statutorily tolled the Petition. *See* 28 U.S.C. § 2244(d)(2). Moreover, a reasonably diligent petitioner would have been more proactive during the three-month period between when Petitioner filed his traverse and when the statute of limitations period terminated. For example, Petitioner could have filed a separate *ex parte* motion seeking a stay of his Petition. Instead, Petitioner's request for a stay was imbedded within his traverse, and there is absolutely no indication that Petitioner took any further action in the months leading up to the expiration of the AEDPA period. (*See* Traverse 5–7, ECF No. 8-1.) Because the untimeliness of Petitioner's petition is due to his own lack of diligence and not to external forces beyond his control, this Court determines that Petitioner is not entitled to equitable tolling of his Sixth Amendment claims. Accordingly, the Court **OVERRULES** Petitioner's objections on this basis.

*(2) Petitioner's Sixth Amendment Claims Do Not Relate Back to the Original Petition*

Under Federal Rule of Civil Procedure Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Thus, new claims in the amended petition and the exhausted claims in the original petition must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). In other words, the new claims cannot be "separate in both time and type from the originally raised episodes." *Id.* at 657 (citation and internal quotation marks omitted). Importantly, "*Mayle* requires

a comparison of petitioner's new claims to the properly exhausted claims left pending in federal court, not to any earlier version of the complaint containing claims subsequently dismissed for failure to exhaust." *King*, 564 F.3d at 1142 (citation omitted).[8]

The burden of establishing relation back is on Petitioner as the moving party. *See Henry v. Cate*, No. Civ. 10-2398-JLS WVG, 2011 WL 7461905, *2 (S.D. Cal. Aug. 22, 2011), *report and recommendation adopted by* 2012 WL 728167 (S.D. Cal. Mar. 6, 2012). Moreover, "the Rule 15 relation back provision is to be strictly construed in the habeas corpus context." *Williams v. Harrison*, No. 05CV2150-J (CAB), 2007 WL 1110910, at *5 (S.D. Cal. Mar. 28, 2007) (Jones, J.) (citing *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005)); *see also Mayle*, 545 U.S. at 657.

Petitioner argues that the Sixth Amendment claims in his SAP "relate back" to the exhausted Fifth Amendment claim in his Petition because the Sixth Amendment claims stem from the same "conduct, transactions and occurrences." (Objs. 21–22, ECF No. 19.)[9] The Court now analyzes the relation back of each sub-claim to the timely filed Fifth Amendment claim.[10]

///

---

[8]Petitioner argues that "[a]ll of the conduct, transactions and occurrences set forth in the SAP were also contained in that original pleading concerning petitioner's Sixth Amendment and Fifth Amendment claims. Therefore, the claims set forth in the SAP 'relate back' to the original pleading." (Objs. 22, ECF No. 19.) However, as *King* instructs, this is not the proper inquiry. Accordingly, the arguments Petitioner makes concerning relation back to the Sixth Amendment claims in his original Petition are inapposite. Instead, this Court will inquire into whether the Sixth Amendment claims presented in the SAP share a "common core of operative fact" with the Fifth Amendment claim in the Petition.

[9]Petitioner claims that the Fifth and Sixth Amendment claims are "sufficiently related and intertwined" that they relate back to one another. (*Id.* at 22–23.) However, this is not the relevant inquiry for determining whether claims relate back, but rather concerns whether federal habeas claims were "fairly presented" to the state court. *See Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008). Because Petitioner is no longer arguing that the claims in his original Petition were fairly presented and exhausted, but is instead seeking relief under *Kelly* or *Rhines*, the Court does not address this language.

[10]In the Petition, Petitioner alleged that the prosecutor, in her closing argument, made improper implied references to Petitioner's decision not to speak with the police or to testify in his own defense. (Pet. 27–28, ECF No. 1-1.) Petitioner's trial counsel, Mr. Ronis ("Ronis"), objected and moved for a mistrial, but the trial court denied the motion. (*Id.* at 27.)

(a) Sub-Claim 1: Failure to Interview or Investigate Matthew McClure and Call Him as a Witness

In the SAP, Petitioner states that "well before trial," he told Ronis that a witness named Matthew McClure ("McClure") had offered to testify on Petitioner's behalf. (SAP 19, ECF No. 16-1.) Ronis informed petitioner that McClure would be a poor witness, because he was a convicted felon and had already denied three times having seen anything. (*Id.*) Accordingly, Ronis did not interview McClure. (*Id.*)

The alleged prosecutorial misconduct occurred during closing arguments, but Ronis declined to interview McClure "well before trial." Although the failure to call McClure as a witness temporally concerns the trial proceedings, the failure to interview rather concerns Ronis's decisions and actions long before trial proceedings even began. Moreover, the factual issues are entirely different. The Fifth Amendment claim concerns remarks the prosecutor made during closing arguments. Sub-claim 1, on the other hand, involves what Ronis did or did not do in preparation of trial. Accordingly, these claims are "separate in time and type" and lack a "common core of operative facts," and therefore sub-claim 1 does not relate back.

(b) Sub-Claim 2: Failure to Interview or Investigate Dontaye Craig and Call Him as a Witness

Petitioner claims in his SAP that Dontaye Craig ("Craig") told a police interviewer on January 18, 2005, that he was present during the victim's murder, and that he only saw two, and not three, people in the pickup truck from which the gunfire originated. (*Id.* at 21–22.) Petitioner, however, was tried and convicted approximately two full years later, in January 2007. (*Id.* at 1.) For the reasons stated above regarding sub-claim 1, this claim similarly does not relate back.

(c) Sub-Claim 3: Failure to Investigate or Adequately Prepare for Trial

Petitioner claims that Ronis only met with him four times from January 2006 to January 2007. (*Id.* at 23.) While Ronis claims to have met with Petitioner "on several occasions" before Petitioner's arrest, visited Petitioner "as needed," and spoken with Petitioner telephonically on a "frequent basis," Petitioner points out Ronis's failure to

keep any records to substantiate these claims. (*Id.*) Moreover, Petitioner states that it is "undisputed" that Ronis did not undertake a private investigation until December 27, 2006, and instead only relied on the San Diego Police Department's investigation of the matter. (*Id.* at 23–24.) Petitioner further claims that of the twenty-five law enforcement and sixteen civilian witnesses that Ronis identified in his trial brief, Ronis only contacted three alibi witnesses. (*Id.* at 24.) Petitioner submits that even these witnesses were not contacted in a timely manner, and therefore the prosecutor was able to impeach Petitioner's alibi because it looked like it had been fabricated only two weeks before trial. (*Id.* at 25.)

Like the conduct alleged in sub-claims 1 and 2, Ronis's failure to investigate Petitioner's case more thoroughly is conduct spanning a significant period of time prior to the start of the trial, and that conduct concerns Ronis's actions. The conduct alleged in the Fifth Amendment claim, on the other hand, is limited to the proceedings themselves and involves the prosecutor's statements at trial. Therefore, this conduct is also "separate in time and type" and does not relate back.

(d) Sub-Claim 4: Failure to Object to Inadmissible and Prejudicial Testimony of Prosecution's Gang Expert

Petitioner argues that Ronis failed to object to a gang detective's testimony that Petitioner was a documented member of the "Skyline" gang, and that this testimony was inadmissible hearsay under *Crawford v. Washington*, 541 U.S. 36 (2004), because it was based solely on a "gang documentation report" prepared by the San Diego Police Department that incorporated various out-of-court statements made to the police. (SAP 26–27, ECF No. 16-1.)

While this sub-claim is at least, like the timely Fifth Amendment claim, limited in time to the trial proceedings, the claims nonetheless are "separate in type," as they fail to share a "common core of operative facts." The Fifth Amendment claim concerns statements made by the prosecutor that were allegedly unconstitutional in nature. The Sixth Amendment claim, however, concerns whether altogether different statements

were admissible, and, if not, whether Ronis's behavior in allowing those statements to stand on the record was appropriate. Accordingly, sub-claim 4 does not relate back.

(e) Sub-Claim 5: Failure to Object to Admission of Tape-Recorded Conversation with William Trice

Finally, Petitioner claims that Ronis failed to object to the admission of a recorded conversation between William Trice ("Trice") and Petitioner that took place shortly after Petitioner's arrest. (*Id.* at 28–29.)[11] Petitioner claims that Trice was acting as a police agent. (*Id.* at 28, 29.) Petitioner seemingly suggests that his counsel's failure to object to evidence that should have been excluded under *Escobedo* was prejudicial error.

Sub-claim 5 suffers from much the same defects as sub-claim 4. Like sub-claim 4, sub-claim 5 is at least temporally related to the Fifth Amendment claim, because both claims involve conduct at trial. But, also like sub-claim 4, sub-claim 5 does not share a "core of operative facts" with the Fifth Amendment allegations. Like sub-claim 4, sub-claim 5 inquires into Ronis's behavior, while the Fifth Amendment claim concerns the prosecutor's statements. Therefore, sub-claim 5 does not relate back. Because none of the Sixth Amendment sub-claims share a "common core of operative facts" with the Fifth Amendment claim, none of these sub-claims relate back to that timely and fully exhausted claim. Accordingly, the Court **OVERRULES** Petitioner's objections on this basis.

For the reasons set forth above, this Court **ADOPTS** the R&R's conclusion that Petitioner has failed either to establish that his SAP is timely or to connect his newly exhausted claims to a pending petition. Accordingly, Petitioner is not entitled to withdrawal-and-abeyance under *Kelly*.

///
///

---

[11]Petitioner's argument focuses almost exclusively on the state appellate court's allegedly erroneous application of *Escobedo v. Illinois*, 378 U.S. 478 (1964), rather than on the facts of Petitioner's case and Ronis's arguable shortcomings. The Court, therefore, will infer as best it can the substance of this sub-claim.

**CONCLUSION**

For the reasons stated, the Court **ADOPTS** the R&R. Respondent's motion to dismiss the SAP is **GRANTED**, and the SAP is **DISMISSED WITH PREJUDICE**. Petitioner's motion to stay is accordingly **DENIED AS MOOT**. Petitioner may proceed with his Fifth Amendment claim as stated in his FAP.

**IT IS SO ORDERED**.

DATED: September 20, 2013

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge